```
                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF FLORIDA

                                        CASE NO. 08-61344-Civ-UNGARO
                                        MAGISTRATE P. A. WHITE
DONALD EDWARD JOHNSON,      :

     Plaintiff,             :

v.                          :           REPORT OF
                                        MAGISTRATE JUDGE
ADAM LERNER, and RALPH SAVAIN,:

     Defendants.            :
_____
```

## I  INTRODUCTION

In this pro se civil rights action pursuant to 42 U.S.C. §1983, Donald Johnson has filed an amended complaint (DE#8) seeking damages for alleged abuses by Miramar Police Department ("MPD") officers during and after his arrest for the rape of a minor, on February 25, 2008.[1] Johnson alleges that in the course of his apprehension at his house he was subjected to brutality. He also alleges that later that day he was subjected to further brutality and other abuse, when he was seated inside a police car parked behind the MPD station, after his release from the hospital where he had been taken for treatment of injuries sustained earlier during his arrest.

Following a Preliminary Report and Order of partial dismissal (DE#s 6 and 9), and an Order deeming the Amended Complaint (DE#8) to be the operative pleading, the case remains pending against two MPD defendants: Officer Adam Lerner, and Detective Ralph Savain.

**This Cause is before the Court upon a joint motion for summary judgment by Lerner and Savain (DE#31)** with supporting affidavits and exhibits (DE#s 30 and 31-2), as to which plaintiff Johnson was advised of his right to respond on or before 5/23/09 [see Order of

---

[1] Police reports of record in this case (DE# 31-2 at pp. 5-7 and 13-17) indicate the following. The victim of the alleged sexual abuse was Ashley Brown, the eleven year old daughter of Donald Johnson's live-in girl friend [Maria Liyim]. Lerner was dispatched to respond to call of a rape in progress, and when he arrived, he encountered an elderly gentleman, Andres Liyim, the victim's grandfather, who guided him to the window of a house at 7041 S.W. 27th Street. There, looking through open blinds, Lerner observed an adult male [plaintiff Donald Johnson] having sexual intercourse with the young female. Andres Liyim then directed Lerner to the rear of the house where he [Lerner] made entry.

Instructions, DE#33, sent to Johnson at the Broward County Main Jail ("BCMJ") on 5/28/09].[2] Johnson filed no document captioned as a Response in opposition to the defendants' motion, but he did not abandon the case. On May 20, 2009, from the BCMJ, he submitted his

---

[2] Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56©.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Upon the filing of defendants' motion for summary judgment (DE# 31), an Order of Instruction (DE# 33) was entered pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), for the purpose of informing the plaintiff Johnson of his right, as a pro se litigant, to respond to the defendants' summary judgment motion. The Order also instructed plaintiff about requirements under Fed.R.Civ.P. 56 for a proper response or responses to such a motion.

Pretrial Statement (DE#34); and subsequently he filed a Notice of Change of Address (DE#36, signed and dated 7/1/09) indicating his transfer to Florida Department of Corrections custody at Dade C.I.

## II   DISCUSSION

Regarding his claim of excessive use of force, Johnson alleges that after Officer Lerner gained entrance through the rear of the house, he came out of his bedroom and Lerner told him to get on the ground and put his hands behind his head, or he was going to shoot. Johnson states that he lay on the floor, and that Lerner restrained him with a knee on his neck while applying handcuffs to his wrists. Johnson alleges that while Lerner was still using a knee to restrain him, "the grandfather" [Andres Liyim] let an unidentified officer in through the front door. That officer kicked him in the back of the head. Johnson alleges that [while he was on the floor on his stomach, with his wrists cuffed behind his back] Officer Lerner then "kicken me in the face with such force he ripped off my bottom lip, broke my front tooth, and shiften by upper teeth to the left out of allignment [sic]."  Johnson alleges that Lerner and the unidentified officer picked him up and took him outside to put him in the back of a police car; and he alleges hearing Lerner tell that officer that "I resisted arrest and hit my head on the floor." Johnson claims that when he was getting into the squad car he hit his head on the car door, that he blacked out, and that the next thing he remembers is waking up in the hospital with a bright light in his face.  Johnson further alleges in his amended complaint that he remembers two officers standing over him at the hospital, and that after his release from the hospital an unnamed officer transported him back to the Miramar Police Department.

According to Johnson, that unnamed officer got out of his car, rolled up the windows, turned on the heater, and left him in the back of the car for about 2 hours, making it difficult for him to breathe. Johnson yelled, and was in pain trying to stay awake. At one point, when the officer came back, Johnson asked to be taken to jail, the officer allegedly replied "why don't you sweat it out you piece of shit." The officer later returned, and turned off the

3

heater. The officer then moved the vehicle across the street, and parked in a location in the back of the same building. Johnson alleges that he then saw Officer Savain walk out of the building. He also alleges that at that point, Officer Lerner drove up in a car, and parked next to the vehicle in which he was seated. Six more police cars then pulled up. Johnson claims he asked Lerner to take him to jail, and Lerner told him he was going nowhere. Thereafter, the "other officer" turned the heater on again. Johnson claims that he begged the officer to turn it off; and that he then began tapping on the window. He claims he was in pain, and was still bleeding. He claims that Savain approached him, and said "give me a reason not to kill you."

Johnson further claims that Lerner later approached the car, opened the door, and hit him more than once on the head with a flashlight while stating that he wanted to kill Johnson. Johnson alleges that, finally, officers took him out of the squad car, shackled his feet, put him back into the squad car, and transported him to the County Jail.

In their motion, the defendants argue [citing Lerner's affidavit (DE#31-2, pp.2-4), and Incident Investigation Report (Id., pp.5-8)], that the only force used against Johnson was when Lerner threw him to the floor after Johnson refused orders to get down. Lerner wrote in his Report, that Johnson's injuries occurred when he "directed him to the ground," and "his face struck the tile floor causing injury to his mouth." (See Id., at p.7).

As one of their exhibits, the defendants have filed excerpts [9 pages of a transcript greater than 35 pages in length] from the 4/28/09 deposition given by Johnson in this case. In their motion, the defendants focus on an answer given by Johnson to a question posed to him at that deposition. After Johnson stated that Lerner had opened the car door and hit him twice on the top of his head, counsel asked "Did you sustain any injuries from that?," and Johnson responded "No. Nothing long-term, no. Just a couple of bumps and bruises." (Depo., T/31, DE# 31-2 at p.24). Counsel then

4

asked: "Anything in your lawsuit relate to claims for damages that you are claiming as a result of that incident, the flashlight?" (Id.), and Johnson responded "No." (Id.). Counsel further pursued that line of inquiry, and asked, "You are claiming no damages as a result of Officer Lerner hitting you with the flashlight?" (Id.), and Johnson responded, "No. Damages are for what happened in the house." (Depo., T/32, at DE#32-1, p.25).

The defendants argue, in light of this statement by Johnson at his 4/29/09 deposition, that notwithstanding his claims of other brutality and abuse alleged in the amended complaint, Johnson only wishes to sue for what occurred inside the house (i.e., alleged use of force by Lerner).

Despite defendants' assertion that Johnson's responses to questions at deposition show intent to abandon all his claims except Lerner's alleged use of excessive force in the house while apprehending him, it appears that this is not so. In his Pretrial Statement (DE#34), drafted a month after his 4/28/09 deposition, Johnson states that Lerner "kicked me in the face after I was handcuffed and laying on the floor of my house" (DE#34, p.1); that later, while he was seated in a squad car behind the MPD, Lerner hit him on the head with a flashlight (Id.); that Lerner punched him in the face, "which cause my stitches to break on my lip, while I sat in the back of the patrol unit" (DE#34, at p.1); and that Detective Savain "allowed the abuse to continue with multiple threats and intimidation," and ... "for several hours allowed me to be caged in a closed police vehicle with the heater on high." [It is noted that there is no allegation in the amended complaint stating that, while Johnson was seated in the patrol car, Lerner had punched him in the face, breaking open stitches he received at the hospital, in addition to the claim that Lerner had reached in the car and hit Johnson in the head with a flashlight].from the hospital to break open].

The defendants' affidavits and the police reports, indicate the following. Lerner, responding to a "rape in progress" call,

went to the house at about 9:37 p.m., and with the victim's grandfather's assistance, looked through a window and saw Johnson engaged in sex with the girl. Perceiving the urgency of the situation, Lerner gained access at the rear of the home, with assistance of the grandfather who also was residing at the house, and encountered Johnson coming out of the bedroom, naked, with an erection. According to Lerner, Johnson refused orders to get down on the ground, and continued to approach him in the aforementioned condition. Lerner states in his affidavit that he believed Johnson was either mentally unstable, or under the influence of controlled substances, and posed an imminent threat of danger to him [Lerner] and/or others. Lerner therefore grabbed him by the arm and threw him to the floor for the purpose of handcuffing. Lerner states that in the process of taking him down, Johnson's face struck the tile, injuring his mouth. Lerner states in his affidavit that as he was doing so a large 100 pound American Bulldog was charging and barking at him in an aggressive manner. The grandfather managed to take control of the dog, and remove it from the house. Lerner was then able to place Johnson in handcuffs, and put him in the rear of his vehicle. Johnson was taken to the hospital for treatment.

Lerner explicitly states in his Affidavit that "at no time during my arrest of Johnson, or at any other time, did I punch or kick Johnson in the face, utilize 'excessive force' in detaining or arresting Johnson, and/or treat Johnson in an improper or unprofessional manner." He also states that he never observed any improper treatment of Johnson by any other police officer.

Lerner also explicitly states in his Affidavit (DE#31-2, pp.2-4) that it was after Johnson was transported away from the scene and was at the hospital that Detective Ralph Savain arrived at the residence; and Lerner states that "at no time did I see Detective Savain in the presence of Johnson." The police Reports (DE#s DE#31-2, pp.5-8, and pp.13-18), and Savain's Affidavit (DE#31-2, pp.11-12) support this sworn statement by Lerner. They indicate that Savain did not arrive at the scene until 10:30 p.m., that upon arrival he went straight into the house, and was advised that the

6

suspect Johnson had already been removed and placed in the back of a police vehicle.

In his Affidavit (DE#31-2, pp.11-12), Savain states that upon his arrival at 10:30 he entered the residence and began his investigation; that he never spoke or interacted with Johnson; that he never witnessed any interaction between any police officers and Johnson; and that he never witnessed any improper treatment of Johnson by police officers. Johnson states in his Affidavit that his attached supplemental case report is true and correct. In that report, Savain states, in pertinent part, that he arrived at the house and had contact with a Sgt. Croye and Officer Lerner; that he was told Lerner had seen the suspect Johnson having sex with the victim, and that Johnson had been placed in custody. Inside the house, Savain observed a trail of blood stains on the floor, that led across the living room floor into the kitchen. Savain then made contact with the victim, and commenced steps to obtain a search warrant, as well as assistance for the young girl from the Sexual Assault Treatment Center.

A claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386 (1989); Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11 Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1197 (11 Cir. 2002); Ortega v. Schram, 922 F.2d 684, 694 (11 Cir. 1991). Such an analysis requires a court to balance "the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the government interest alleged to justify the intrusion." Graham, supra, quoting United States v. Place, 462 U.S. 696 (1983). The factors a Court considers when balancing the necessity for an application of force against an arrestee's constitutional rights include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; Graham, supra, 490 U.S. at

396; Vinyard, supra, 311 F.3d at 1347; Lee, supra, 284 F.3d at 1197; Ortega, supra, 922 F.2d at 695. In determining whether force applied was "reasonable" under the circumstances (i.e., proportional to the need for its use)[3], the Court must examine: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied. Vinyard, at 1347; Lee at 1998. "Reasonableness" for purposes of such an analysis is judged according to an objective standard under the totality of the circumstances, without regard to the officers' underlying intent. Graham, supra at 389.[4]

## Analysis

### 1. Savain

The plaintiff does not state that Detective Savain personally struck him (either at the house, or in the car), or was actively responsible for caging him in the back of a police car for two hours with the heater on. At deposition, Johnson has merely alleged that when he was seated in a car behind the MPD station he saw

---

[3] Although the test applied by the Eleventh Circuit previously included a subjective prong, examining whether the force was applies maliciously, see e.g. Leslie v. Ingraham, 786 F.2d 1533, 1536 (11 Cir. 1986), that factor has been eliminated from the analysis by Graham and other cases establishing that the excessive force inquiry should be completely objective, thereby excluding consideration of the Officer's intentions. Lee, supra, 284 F.3d at 1198 n.7.

If the force applied was reasonable under the circumstances and not excessive, the police officer has not violated any clearly established constitutional right, and is entitled to summary judgment based upon qualified immunity. Moore v. Gwinnett County, 967 F.2d 1495, 1498 (11 Cir. 1992), quoting, Leslie v. Ingram, 786 F.2d 1533, 1536 (11 Cir. 1986). The defense of qualified immunity insulates governmental officials from personal liability for actions taken pursuant to their discretionary authority. See: Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Flores v. Satz , 137 F.3d 1275 (11 Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11 Cir. 1996).

[4] The Court notes that, just as a claim of excessive force by an arresting officer is cognizable under 42 U.S.C. §1983, so too is a claim that an officer who himself did not use force, but was present, failed to intervene to prevent unconstitutional force by a fellow officer, if circumstances were such that intervention was possible. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985).

Savain exit through a back door of the station at about the time that Officer Lerner and other officers drove up in their vehicles.

At deposition, Johnson was asked why he was suing Savain, and he responded that as "the man in charge," he "could have stopped the abuse." Johnson stated that his post-incident review of the police report indicated that Savain was the only detective. He also asserted at deposition that Savain "was there when Officer Lerner was antagonizing me and intimidating me and hitting me over the head with a flashlight." (Depo., T/32-33). When Johnson was asked whether Savain saw Lerner do this, Johnson said, "I don't know." (Id. at T/33). At deposition, Johnson further asserted that Savain must have known that he was in the car with the heater running, because he (Johnson) was screaming, and because he (Johnson) was there when he kicked the window. (Id.). Johnson, however, acknowledged at deposition that he did not tell Savain directly that the heater was on. (Id., T/33-34); and that he assumes Savain was aware because he was tapping on the window and screaming. (Id., T/34). Johnson further stated at deposition that he assumes Savain must have heard him, because he was tapping on the window, and then kicked it out of alignment. (Id.). When pressed for further evidence that Savain was aware of the alleged abuse, Counsel asked "Did he [Savain] look your way? Did he even look at you?" (T/34), and Johnson acknowledged, "I don't know." (T/34).

It is clear that Johnson's claim that Savain should be held responsible for the alleged acts of fellow officers is based on his assumption that Savain was aware of those alleged acts and failed to intervene. Johnson's statements/admissions at deposition serve to undermine his allegations made against Savain in the amended complaint. A "mere scintilla" of evidence supporting Johnson's position is not sufficient to defeat a motion for summary judgment. Rather, "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, supra; and Anderson v. Liberty Lobby, Inc., supra. In light of Johnson's admissions that he does not know whether Savain saw Lerner strike him with a flashlight, that he did not personally speak with

9

Savain, and his statements that he only assumes that Savain was aware of the alleged abuse involving the heater, that he cannot say that Savain saw Lerner strike him with a flashlight, and that he cannot say that Savain even looked his way when he was banging on or kicking the car window to get officers' attention, it cannot be said that there is evidence refuting Savain's statements made under oath that he neither personally abused Johnson, nor observed any other officer doing so.

It is apparent, under the circumstances, that on the claim against Savain, there is insufficient evidence to send the case to a jury, and that Savain is entitled to summary disposition of the claims against him, and is entitled to qualified immunity.

The same cannot be said, however, with respect to all claims raised against the defendant Lerner.

### 2.  **Lerner**

The plaintiff Johnson clearly is able to identify Lerner, since it was he who encountered Johnson inside the house, and handcuffed him. Johnson therefore must be presumed, for purposes of the summary judgment motion, to have been able to identify Lerner at the time that he (Johnson) was later seated in a police car behind the MPD, when Lerner allegedly hit him with a flashlight.

With respect to the use of force incident inside the house, there clearly exist genuine issues of material fact. The plaintiff has alleged, under penalty of perjury, in his amended complaint, that he got down on the floor when commanded to do so, and that use of force by Lerner (kicking him in the head and mouth) did not occur until after he was on his belly, with his arms behind his back, in handcuffs.  In starkly contrasting statements of fact in Lerner's Supporting Statement of Facts (DE#32), in his Affidavit (DE# 31-2, pp.2-4), and in the police reports, it is alleged that Johnson did not comply, and get down on the floor when commanded to do so. Rather, Lerner's evidence is that he had to throw Johnson to the floor, and then handcuffed him without any further use of

force; and that Johnson's mouth injuries occurred solely as a result of the accidental striking of Johnson's mouth on the floor when he was taken to the ground for purposes of handcuffing.

In this case, while it is true that the plaintiff did not file a document as a "Response" in opposition to the defendants' motion for summary judgment, where the facts in his pleading, declared under penalty of perjury by Johnson to be true, are irreconcilable with the version of facts posed by defendant Lerner, the existence of those fact allegations in the pleading itself is sufficient to create a genuine issue of material fact, and foreclose the grant of summary judgment on the issue of use of force by Lerner. See Perry v. Thompson, 786 F.2d 1093, 1095 (11 Cir. 1986) (holding that facts alleged by the plaintiff in a sworn pleading are sufficient to defeat a motion for summary judgment, and it is improper to grant summary judgment on the basis of credibility choices); Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n.5 (11 Cir. 1992)(holding that the "facts alleged in an inmate's sworn pleading are sufficient" to defeat as motion for summary judgment and "a separate affidavit is not necessary," so long as the allegations are not conclusory in nature). Cf. 28 U.S.C. §1746, which provides an alternative to making a sworn statement, by allowing the individual to say that his/her statement is true under penalty of perjury.

Here, although the defendant asserts that plaintiff's fact allegations are untrue, the plaintiff's statements of fact are not conclusory in nature. (He specifically alleges that he voluntarily got down on the floor when commanded to, that he did not sustain injuries by being thrown down and striking the floor with his face, and that his initial facial injuries were the result of being kicked in the head and face by Lerner and an unnamed officer, after he was already handcuffed). Those statements are found in a handwritten document, which is signed and dated by Johnson, and declared by him to be true, under penalty of perjury. As such, they suffice to create a genuine issue of material fact which makes summary judgment inappropriate on this claim.

11

If the plaintiff's version of the facts were consistent with the defendant Lerner's (i.e., if both were in agreement that Lerner had thrown the plaintiff to the floor, and there was no post-handcuffing use of force) then for the use of force by Lerner inside the house it appears that the defendant Lerner would have been entitled to qualified immunity. This is because it appears that an officer, faced with a naked man approaching him, whom the officer had moments before seen having sexual relations with a girl who appeared to be under age, could reasonably conclude that it was necessary to throw the man to the floor and handcuff him, where that man had refused orders to stop and get down on the floor, and had continued approaching the officer. The suspect had just been observed committing a serious, violent felony involving a minor, he appeared to be resisting efforts to take him into custody, and the officer perceived that he was unstable and posed a risk of harm. Under the circumstances, throwing a non-complaint suspect to the floor, for purposes of handcuffing, would appear not to be excessive, but rather to constitute a minimum amount of force necessary to control the individual, and take him into custody.

Here, to the extent that it is alleged that the plaintiff was brutalized while handcuffed with his hands behind his back, it cannot be said that the defendant Lerner is entitled to qualified immunity, as he asserts. While case law provides that reasonable measured uses of force may be applied to effect a suspect's arrest, Courts have also held that gratuitous applications of force are not constitutionally protected. See Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11 Cir. 2008) (Eleventh Circuit affirming district court's finding of fact that a punch by Officer Otivero to Hadley's stomach while he was handcuffed and not resisting or struggling, constituted excessive force; and noting that "Our cases hold that gratuitous use of force when a criminal subject is not resisting arrest constitutes excessive force")(citing Lee v. Ferraro, 284 F.3d 1188, 1198 (11 Cir. 2002); Slicker v. Jackson, 215 F.3d 1225, 1233 (11 Cir. 2000) (holding that force was excessive where officers kicked a handcuffed and non-resisting defendant in the ribs and beat his head on the ground); McDowell v. Rogers, 863 F.2d

1302, 1307 (6 Cir. 1988) (totally gratuitous blow from a policeman's nightstick may cross the constitutional line).

Summary judgment is not a procedure for resolving a swearing contest. Chandler v. Baird, 926 F.2d 1057 (11 Cir. 1991). In this case, resolution of the issues and facts that are in dispute, based upon the parties' opposing and conflicting Affidavits/statements under penalty of perjury, and other evidence, would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in Anderson v. Liberty Lobby, Inc., supra, "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." Anderson, supra, 477 U.S. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Although the plaintiff Johnson apparently stated at deposition that he did not intend to seek damages from Lerner for hitting him on the top of his head with a flashlight, because the injuries sustained as a result were minor and not lasting (bumps), it does not appear appropriate for the Court to dismiss that use of force claim at this juncture, where the claim is alleged in the operative pleading, appears to be among those listed in plaintiff's pretrial statement which he says he can prove at trial, and there has been no notice of voluntary dismissal of the claim by the plaintiff. As to this claim there clearly are issues of material fact in dispute (Plaintiff has declared under penalty of perjury that he was struck by Lerner with the flashlight while seated in the police cruiser, and Lerner has categorically stated in his affidavit that the sole force used by him against Johnson was to throw him to the floor inside the house, during the process of apprehending and handcuffing Johnson).

Finally, there is plaintiff's entirely new claim, which he

attempts to raise for the first time in his pretrial statement (i.e., the claim that Lerner, by striking him in the mouth with a "downward blow" as he sat in the police cruiser behind the MPD station, thereby reopening his mouth wound(s) that had been closed with stitches in the hospital). Such an allegation is distinct and separate from a claim that the same officer had struck him on top of the head with a flashlight. This claim does not appear to be appropriate for consideration in this summary judgment proceeding. This is because a plaintiff cannot raise a new claim for the first time at summary judgment, especially where facts related to the claim were not alleged in the operative complaint. It follows that in this case, where the plaintiff first raises the claim in a post summary judgment filing, that the claim is not appropriate for consideration. See <u>Snelling v. Stark Properties, Inc.</u>, No. 5:05CV46 DF, 2006 WL 2078562 at *13, n.17 (M.D.Ga. July 24, 2006) (recognizing that the pleading standard does not afford plaintiffs with an opportunity to raise new claims at summary judgment; but finding that "Snelling's retaliation claim is not being raised for the first time; the facts giving rise to the claim were pleaded in her complaint, and that is what counts"); <u>Gilmour v. Gates, McDonald and Co.</u>, 382 F.3d 1312, 1315 (11 Cir. 2004) and cases cited therein; <u>See</u>: <u>Hays v. General Electric Company</u>, 151 F. Supp.2d 1101, 1106 (N.D. Ill. 2001) (holding that a plaintiff may not amend its complaint through arguments in its brief in opposition to a motion for summary judgment, and that although a complaint cannot be dismissed because the plaintiff has failed to identify a theory, or indeed, has identified the wrong theory, the plaintiff must commit to a theory at some point, and a change in theories at the summary judgment stage is not allowed because, ordinarily, discovery has been completed, and an eleventh hour change of theory would waste judicial resources and the resources of the parties [citations omitted]).

### III   CONCLUSION

It is therefore recommended: 1) that the defendants' joint motion for summary judgment (DE#31) be GRANTED, in part, as to all

claims against the defendant Detective Savain; 2) that the defendants' joint motion for summary judgment (DE#31) be DENIED, in part, as to the claims that the defendant Officer Lerner used force against plaintiff Johnson while he was on the floor of his house, not struggling, with his arms in handcuffs behind his back, and that Lerner later beat Johnson on the head with a flashlight while Johnson was seated in the back of a police vehicle with his arms in restraints; and 3) that the plaintiff not be allowed to proceed on an untimely claim that while he was seated in the police car he was struck in the mouth by Officer Lerner, reopening lip wounds that a doctor had closed with stitches.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.


Dated: August 27th, 2009.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  Donald Johnson, Pro Se
     DC#B07125
     Dade Correctional Institution
     19000 S.W. 377th Street
     Florida City, FL 33034-6499


     Daniel L. Abbott, Esquire
     WEISS SEROTA HELFMAN PASTORIZA
         COLE & HONISKE, P.L.
     200 E. Broward Blvd., Suite 1900
     Fort Lauderdale, FL 33301


     The Honorable Ursula Ungaro,
     United States District Judge

15